UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY MATTOX,

               **Plaintiff,**               **CIVIL ACTION NO. 10-14534**

     **vs.**                      **DISTRICT JUDGE PAUL D. BORMAN**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Defendant's unopposed Motion for Summary Judgment (docket no. 13) be GRANTED and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL BACKGROUND**

        Plaintiff protectively filed applications for period of Disability, Disability Insurance Benefits, and Supplemental Security Income on July 27, 2007, alleging that he had been disabled and unable to work since June 27, 2005 due to foot ulcers and diabetes. (TR 116-26, 146). The applications were denied on October 15, 2007. (TR 47-54). On September 30, 2009 Plaintiff appeared with counsel in Detroit, Michigan and testified via video conference with the Administrative Law Judge (ALJ) Janice M. Bruning presiding over the hearing in Oak Brook, Illinois. (TR 12). Vocational Expert (VE) GleeAnn L. Kehr also testified at the hearing. (TR 12, 111). In a January 28, 2010 decision, the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing a significant number of jobs existing in the national economy. (TR 12-19). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant

1

action for judicial review.  (TR 1-3).  The Commissioner now moves, unopposed, for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking affirmance of the Commissioner's final decision.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was forty-eight years old at the time of the administrative hearing.  He possesses a General Equivalency Diploma (GED) and received specialized training in the culinary arts.  (TR 26-27).  He last worked in 2004 as a janitor where he was required to lift heavy equipment and furniture weighing sixty pounds, use machinery and tools, walk, stand, stoop, climb, crouch, crawl, grasp, kneel, and reach for eight hours a day.  (TR 147-48).  He was also required to mop, sweep, vacuum, clean windows, and empty trash.  (TR 147).

Plaintiff testified that he has osteomyelitis with foot ulcers and swelling, and chronic pain in his arms and feet caused by diabetic neuropathy.  (TR 28-29, 34-36).  He reports that constant pain has restricted his mobility and caused depression and weight gain.  (TR 28-29).  Plaintiff testified that he can stand for only three to four minutes, sit for five to six minutes, and climb only three steps without excruciating pain.  (TR 29-30).  He testified that he has difficulty bending, stooping, crouching, crawling, and maintaining his balance.  (TR 30-31).  Plaintiff states that he is unable to hold objects in his hands due to nerve damage, and he has limited overhead mobility of the right arm caused by neuropathy or a rotator cuff injury.  (TR 31, 35-37).  He testified that he elevates his feet above his heart to control pain and he sometimes uses a cane for balance.  (TR 30).  He states that he needs assistance with personal care and basic household chores.  (TR 32-33).

Plaintiff testified that he suffers from memory loss and crying spells.  (TR 29).  He sleeps

during the day because he has difficulty sleeping at night. (TR 32, 37). He claims to have hallucinations and hears voices talking to him but he is not receiving mental health treatment. (TR 28, 36-37). He reports that he has two bullets lodged in his back that cause him pain. (TR 35). He does not belong to any clubs or organizations, he reads occasionally, he has friends who visit him, and he enjoys watching television. (TR 27, 33).

**B.    Medical Record**

The medical evidence pertaining to Plaintiff's physical and mental health is sparse. In terms of Plaintiff's mental condition, the record contains two psychiatric reports prepared for the state disability determination service (DDS) by Dr. R. Hasan and Dr. Zahra Yousuf. (TR 203-05, 213-30). During the evaluation conducted by Dr. Hasan on September 24, 2007, Plaintiff complained of feeling depressed and paranoid since his June 2007 release from prison. (TR 203-05). He reported that he lives alone, he remains capable of performing light chores and light cooking, and he cares for his basic needs. He reported that he spends most of his time reading and watching television. Dr. Hasan observed that Plaintiff's gait was slow, he was oriented to time, person, and place, he was in contact with reality, he had good information recall, and he had some motivation and insight. Dr. Hasan diagnosed Plaintiff with adjustment disorder with depressed mood, dysthymic disorder, mood disorder due to medical condition, and assigned a GAF of 60.

Dr. Zahra Yousuf completed a Mental Residual Functional Capacity Assessment for the DDS on October 12, 2007. (TR 213-30). Dr. Yousuf found that Plaintiff had a moderate limitation in maintaining concentration, persistence, or pace, mild limitations in activities of daily living and social functioning, and no episodes of decompensation. Dr. Yousef opined that Plaintiff retains the mental capacity to understand, remember, maintain concentration, pace, get along with others, and

respond to change in order to complete unskilled tasks on a sustained basis. (TR 215).

In terms of Plaintiff's physical condition, the record contains one internal medicine evaluation performed on September 24, 2007 by Dr. Bina Shaw on behalf of the DDS. (TR 206-12). Dr. Shaw diagnosed Plaintiff with type II diabetes, hypertension, and chronic calluses on his feet. Dr. Shaw reported that Plaintiff had diabetic retinopathy that was treated with laser surgery, no diabetic nephropathy, and a history of right shoulder cuff repair surgery. On physical examination Plaintiff had full range of motion in his spine, knees, hips, ankles, shoulders, elbows, and wrists. His muscle power was 5/5 in all extremities and he had diminished sensation for light touch and vibration. Dr. Shaw observed that Plaintiff's gait was normal with no limp, he could get off the table and chair without assistance, and he did not use a cane. Dr. Shaw reported that Plaintiff remained independent in his activities of daily living.

## C.    Vocational Expert

The Vocational Expert (VE) testified that Plaintiff's past work as a janitor was classified as medium to heavy unskilled labor. (TR 38). The ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience who can lift twenty pounds occasionally, ten pounds frequently, and stand, walk, and/or sit a total of six hours during an eight hour day, with the following limitations: (1) restricted to occasional push and pull with the lower extremities, (2) limited to occasional climbing, balancing, stooping, crouching, kneeling, or crawling, and (3) restricted to simple, repetitive, unskilled work. (TR 38-39).

The VE testified that while such an individual would not be able to perform Plaintiff's past relevant work as a janitor, the hypothetical person could perform light work as a housekeeper, cashier, and office helper. (TR 39). The VE testified that there are approximately 15,900 such jobs

in the Detroit area.  (TR 39).

Next, the ALJ asked the VE to assume an individual with Plaintiff's age, education, and work experience who can lift and carry ten pounds occasionally, less than ten pounds frequently, stand and/or walk a total of two hours during an eight hour day, and sit at least six hours during an eight hour day, with the following limitations: (1) restricted to occasional push and pull with the lower extremities, (2) limited to occasional climbing, balancing, stooping, crouching, kneeling, or crawling, and (3) restricted to simple, repetitive, unskilled work.  (TR 39).  The VE testified that such an individual would be able to perform sedentary unskilled labor as an order clerk, telephone clerk, and account clerk, comprising 11,800 jobs in the Detroit area.  (TR 39).

If the individual also needed to sit and stand at will, there would be a fifty percent reduction in the number of available sedentary jobs and available jobs as a cashier and office helper at the light exertional level.  (TR 39).  This limitation would preclude light work as a housekeeper.  (TR 39). The VE testified that if the individual needed to be off task twenty percent of the time due to pain and take naps throughout the day, or if he needed to be off task twenty percent of the time because of poor memory, these limitations would be work preclusive.  (TR 40-41).

The VE testified that a hypothetical individual who had only occasional use of his hands would be precluded from performing sedentary work, but he could perform light work as an information clerk and telephone clerk, comprising 12,000 jobs in the Detroit area.  (TR 41).  The VE explained that her testimony was consistent with the Dictionary of Occupational Titles.  (TR 40).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since June 27, 2005, and suffers from a combination of history of right shoulder cuff tear/repair, diabetes

mellitus, and adjustment disorder, he does not have an impairment or combination of impairments that meets or equals a listed impairment. The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform a limited range of light work involving simple, repetitive tasks. The ALJ further concluded that Plaintiff could not perform his past relevant work as a janitor, but could perform a significant number of jobs in the national economy. Consequently, the ALJ concluded that Plaintiff is not disabled under the Social Security Act.

## V.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

6

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

1.  he was not presently engaged in substantial gainful employment; and
2.  he suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.  he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented him from doing

his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age,

education and past work experience to determine if he could perform other work.  If he could not,

he would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the

burden of proof only on "the fifth step, proving that there is work available in the economy that the

claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make

a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to

perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.

1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert

testimony in response to a hypothetical question if the question accurately portrays the plaintiff's

physical and mental impairments.  *Id.* (citations omitted).

**C.      Analysis**

Defendant moves for summary judgment on the grounds that the ALJ's decision that Plaintiff

is not disabled is supported by substantial evidence and is in accord with the law.  Plaintiff,

proceeding *pro se*, did not file a Motion for Summary Judgment or file an opposition to Defendant's

motion.  Plaintiff's complaint alleges that the ALJ failed to take into account all of his ailments,

including his hypertension, diabetic retinopathy, feet and bunion deformity, pain, right-hand nerve

7

damage, and difficulties standing/stooping/lifting, and failed to properly assess his credibility. (Docket no. 1).

There is no dispute regarding the ALJ's step one finding.  At step two of the five-step disability analysis the ALJ found that Plaintiff has the following severe impairments: combination of history of right shoulder cuff tear/repair, diabetes mellitus, and adjustment disorder.  "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  This is so because the second step is designed simply to screen out and dispose of baseless claims, which it accomplishes by testing whether the claimant has *any* severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities.  *Anthony v. Astrue*, 266 Fed. Appx. at 457; 20 C.F.R. §§ 404.1520(c), 416.920(c).

Plaintiff met his step two burden and the ALJ proceeded to step three, finding that Plaintiff did not have a listing level impairment.  (TR 14-15).  The step three finding was based on the absence of any medically objective evidence in the record to show that Plaintiff's impairments met or equaled any listed impairment.  Plaintiff has not shown that the ALJ erred in the step three assessment.  *Foster v Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (the claimant carries the burden of demonstrating that his impairment satisfies the diagnostic description for the listed impairment).

Next, the ALJ considered all of the evidence of record and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Once this

finding was made, the ALJ was required to evaluate the evidence as a whole, including Plaintiff's own statements about his pain or other symptoms, and consider the extent to which the intensity and persistence of the symptoms could limit Plaintiff's ability to work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  Whenever the evidence as a whole fails to support a claimant's statements about the intensity, persistence, or limiting effects of his pain or symptoms, the ALJ is required to make a finding on the claimant's credibility.  SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  "[A]n ALJ's findings based on the credibility of [a claimant] are to be accorded great weight and deference."  *Walters v. Comm'r*, 127 F.3d at 531.

Here, the ALJ noted that she considered all of the medical evidence of record and took into account Plaintiff's subjective complaints about the effects of his pain and other symptoms on his ability to work.  After doing so, the AlJ concluded that Plaintiff was not persuasive.  The ALJ then addressed various inconsistencies between the objective medical evidence, Plaintiff's testimony about the extent of his pain and limitations, and the ALJ's own personal observations that caused the ALJ to question Plaintiff's credibility.  For instance, the ALJ noted that the medical record did not support Plaintiff's claims of neuropathy or osteomyelitis, and instead showed that Plaintiff had only calluses on his feet.  (TR 15, 17).  Plaintiff's claims of limited mobility were inconsistent with Dr. Shaw's physical examination finding that Plaintiff had full range of motion in his spine, knees, hips, ankles, shoulders, elbows, and wrists.  (TR 17).  His claims of physical limitations were also at odds with medical evidence showing that his gait was normal, he walked without a limp, he could get on and off an examination table and chair without assistance, and he did not use a cane or other assistive device.  (TR 17).  The ALJ's own personal observations revealed that Plaintiff sat for twenty-five minutes at the hearing before getting up, and did not have a cane at the hearing, which

9

contradicted Plaintiff's testimony that he could sit no longer than 5-6 minutes and he required a cane for ambulation.  Additionally, although Plaintiff had vision problems attributed to diabetes and testified that he could not attend to his basic needs, his testimony was inconsistent with evidence that showed that Plaintiff lives alone, he is able to do light chores and light cooking, he can care for his basic needs, watch television, read, and he does not require assistance due to poor vision.

The ALJ considered the record as a whole, accurately addressed Plaintiff's complaints, and accounted for some of Plaintiff's physical and mental limitations and complaints of pain in his RFC findings.  The ALJ's RFC and step four findings that Plaintiff does not have the residual functional capacity to perform his past relevant work are supported by substantial evidence on the record. Finally, at step five the ALJ posed valid hypothetical questions to the VE and found based on substantial evidence in the record that there are a significant number of available jobs in the economy that Plaintiff can perform.  The ALJ considered the evidence before her and crafted a hypothetical that accurately portrayed Plaintiff's limitations. The Court should find that the ALJ's decision to deny Plaintiff's claim for benefits is supported by substantial evidence and is in conformity with the law.  Accordingly, Defendant's Motion for Summary Judgment should be granted.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but

10

fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 10, 2011            s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Mark Anthony Mattox and Counsel of Record on this date.

Dated: January 10, 2011            s/ Lisa C. Bartlett
                                   Case Manager

11